STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

KELSEY C. DAVIDSON (CABN 322323)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6959
    Fax: (415) 436-7027
    kelsey.davidson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 4:22-MJ-71597-MAG |
| Plaintiff, | MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION |
| v. | Date: December 21, 2022 |
| EDILSON CANACA-RODRIGUEZ, | Time: 10:30 a.m. |
| Defendant. | Court: Hon. Laurel Beeler |

## INTRODUCTION

The defendant, Edilson Canaca-Rodriguez, is a Honduran national who has repeatedly sold narcotics to an undercover officer. This included significant quantities of suspected fentanyl, a drug which the DEA has estimated that a mere two milligrams (0.002) can be lethal depending on a person's body size, tolerance, and past usage. In addition to selling narcotics in Oakland, GPS tracking data shows that a vehicle associated with the defendant drove into the Tenderloin in San Francisco on six days out of a twenty-one-day period, where it is believed that he engaged in narcotics sales.

The activities of the defendant and others who similarly peddle fentanyl and other drugs in the Bay Area for a living have been deadly for the citizens of this area. In 2020 and 2021, approximately 1,300 people died from drug overdoses in San Francisco—nearly twice the number who died from COVID-19 over that same period. And about three quarters of those overdose victims—or about 1,000 people—had fentanyl in their systems.[1] The scourge continues in 2022, with San Francisco currently on pace to have nearly 600 overdose deaths by the end of this year.[2] In October alone, 43 people died from accidental overdoses, 33 of which involved fentanyl.[3]

The defendant must overcome a rebuttable presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community. Here, he cannot do so. The government therefore requests that the Court order the defendant detained pending trial.

## FACTUAL BACKGROUND

### I. The Defendant Sold an Undercover Officer Narcotics on Three Separate Occasions

The defendant sold narcotics to an undercover officer on three separate occasions—October 11, 2022, November 3, 2022, and December 1, 2022.

On October 10, 2022, an undercover officer text messaged the phone number of a known drug trafficker with whom he was in contact with. The user of the phone replied that he had a new phone number. The undercover officer text messaged the new phone number and arranged to purchase fentanyl the next day. On October 11, 2022, the undercover officer arrived at the purchase location in Oakland, and the defendant got into his car. The defendant sold the undercover 127.8 grams gross of suspected fentanyl for $1,200 USD. A TruNarc Analyzer test of the suspected fentanyl showed positive for the "presence of fentanyl or methamphetamine."[4]

---

[1] Trisha Thadani, et al., *San Francisco's fentanyl crisis: A disaster in plain sight*, S.F. Chron., Feb. 2, 2022 (https://www.sfchronicle.com/projects/2022/sf-fentanyl-opioid-epidemic/).

[2] *See* Yoohyun Jung, *43 People Died in October in San Francisco from Accidental Overdoses*, S.F. Chronicle, https://www.sfchronicle.com/projects/2021/san-francisco-drug-overdoses-map/ (last updated Nov. 21, 2022).

[3] *Id.*

[4] These results have yet to be confirmed by laboratory testing, but it is likely that the test will conclude that this is fentanyl. According to the DEA, this test result can occur when particles from one drug are on the baggie of the other drug or when there is a fentanyl analogue that closely resembles

On November 3, 2022, the undercover officer again met the defendant in Oakland to purchase narcotics. The undercover gave the defendant $2,100 USD in exchange for one ounce of fentanyl and 300 M-30 (fentanyl) pills, for a total of 135.7 grams gross. A TruNarc Analyzer test of the suspected fentanyl showed positive for the "presence of fentanyl or methamphetamine."

On December 1, 2022, the undercover officer met the defendant in Oakland and purchased one ounce each of fentanyl and methamphetamine for $700 USD. A TruNarc Analyzer test of the suspected fentanyl afterwards showed positive for the "presence of fentanyl or methamphetamine," and a TruNarc Analyzer test of the suspected methamphetamine showed positive for the presence of methamphetamine

## II.   The Defendant Was Arrested in a Location with Additional Narcotics

On December 15, 2022, the defendant was arrested at what is believed to be his residence (which is near the cross streets given to pretrial). There were several minors present at the time of the arrest. Additionally, more narcotics were found in the apartment, including 499.6 grams gross of fentanyl, 102.6 gross grams of methamphetamine, 51.3 grams gross of cocaine base, 43.7 grams gross cocaine HCL, and 37.3 grams gross of prescription pills. A gun was also found in the apartment.

## LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.* "[T]he Bail Reform Act mandates an [1] individualized evaluation [2] guided by the factors articulated in § 3142(g)." *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Categorical grants or denials of bail, not tethered to an individualized determination,

---

methamphetamine.

are impermissible. *Id*. Consideration of factors outside the articulated factors set forth in Section 3142 is also disfavored. *Id*.

Where there is probable cause that a defendant has violated the Controlled Substances Act and faces a maximum of 10 years in person or more (as here), courts apply a rebuttal presumption against the defendant that no condition or combination of conditions reasonably will assure the defendant's appearance and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this scheme, the burden of production then shifts to the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Although the presumption is rebuttal, it is not a "bursting bubble." *United States v. Jessup*, 757 F.2d 378, 382-383 (1st Cir. 1985) (Breyer, J.), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990). In other words, the presumption is not so weak that if a defendant introduces evidence, "the presumption 'bursts' and totally disappears, allowing the judge (or jury) to decide the question without reference to the presumption." *Id*. (further stating that such an approach would "render the presumption virtually meaningless" because a defendant can "always provide the magistrate with *some* reason" (emphasis added)). Even if the defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See United States v. King*, 849 F.2d 485 (11th Cir. 1988); *accord United States v. Ward*, 63 F. Supp. 2d 1203, 1209 (C.D. Cal. 1999) (citing *Jessup*, 757 F.2d at 389). If the court concludes that the defendant has rebutted the statutory presumption of detention, the court must consider four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

UNITED STATES' DETENTION MEMO
4:22-MJ-71597-MAG
4

# ARGUMENT

The defendant is subject to a presumption in favor of detention, which he cannot overcome. To the contrary, the defendant has an incentive to continue his unlawful business dealing narcotics or flee to Honduras, his home country.

## I. The Defendant Is Subject to a Presumption in Favor of Detention

The defendant is charged with one violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) for distribution of methamphetamine, which carries a maximum penalty of 20 years' imprisonment. Because the defendant is alleged to have violation the Controlled Substances Act and the maximum penalty is greater than 10 years' imprisonment, the defendant is subject to a rebuttable presumption in favor of detention. *See* 18 U.S.C. § 3142(e)(3)(A). To overcome this presumption, the defendant bears the burden to prove *both* that he is not a flight risk *and* that his release will not endanger the community. He cannot do so.

## II. The Defendant Poses a Danger to the Community

The record demonstrates that the defendant poses a danger to the community. He appears to make his living by selling narcotics, including significant quantities of fentanyl—a drug that has wreaked havoc on the Bay Area. The defendant's "continuing involvement with the distribution of drugs" militates in favor of detention. *United States v. Wolf,* 2015 WL 4573039, at *3 (N.D. Cal. July 29, 2015); *see also Fulgham*, 2012 WL 2792439, at *4 ("The Senate Report states: The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community. Defendant's tendency to repeatedly commit similar crimes shows that he poses an unmitigable danger to the community.") (quotation marks and citation omitted).

## III. The Defendant Is a Flight Risk

The defendant poses a significant flight risk. First, the defendant is a Honduran citizen who is here illegally and has significant ties to his home country. The defendants' parents, three of his siblings, and his child all reside in Honduras. Additionally, he does not have any family in or ties to the Bay Area, and he was living in a location filled with narcotics for which he does not even know the address. His significant ties to Honduras combined with his lack of ties to the Bay Area and the serious consequences the defendant is facing here, the defendant has every incentive to flee to his home country and avoid


prosecution. There is thus a substantial risk that the defendant will refuse to abide by any court-ordered conditions of release and flee.

### CONCLUSION

No conditions of release will assure the safety of the community or the defendant's appearance at future court hearings. The Court should grant the government's motion to detain the defendant pending trial.

DATED: December 20, 2022  Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

*/s/ Kelsey C. Davidson*
KELSEY C. DAVIDSON
Assistant United States Attorney